UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| DR. EHAB SHEHATA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:20-cv-00012-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| DAVID W. BLACKWELL, *et al*., | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Before the Court is Plaintiff Dr. Ehab Shehata's Motion for Preliminary Injunction. [R. 7.] Dr. Shehata asks the Court to enjoin the University of Kentucky College of Dentistry from terminating his employment before June 30, 2021. He further asks the Court for an order reinstating his clinical privileges, duties, and activities, and prohibiting Defendants from speaking about his allegedly wrongful termination. In consideration of the argument made at the hearing as well as the briefing by both parties, Dr. Shehata's Motion for Preliminary Injunction [R. 7] is DENIED.

**I**

The parties apparently agree that Plaintiff Dr. Ehab Shehata is a board certified oral and maxillofacial surgeon who has been employed at the University of Kentucky College of Dentistry since 2013. [R. 7; R. 8; R. 9.] Beyond that, the parties' factual accounts differ.

According to the Defendants, "Dr. Ehab Shehata, along with Dr. Lawrence Cunningham, falsified medical records used to bill Medicare and Medicaid, exposing the University to potential False Claims Act liability and necessitating repayment of funds from the University to

the federal government." [R. 9 at 1.]  Defendants explain that Dr. Shehata engaged in "copy, paste, delete" scheme to modify medical records, thereby making it appear that he performed services for a patient when in fact the services were performed by a resident. *Id.* at 2.  When a College of Dentistry faculty member performs services, the faculty member receives 40% of the revenue collected for the service, while the University receives 60%. *Id.* at 3.  In contrast, when a resident performs the service, the University receives 100% of the revenue. *Id.*  Defendants claim "Dr. Shehata would copy and paste a resident's notes into a new note that listed Dr. Shehata as the treating provider then delete the resident's note," thereby "caus[ing] the College of Dentistry to submit false claims to the federal government[.]" *Id.*  Furthermore, as a result of these false documents, the University says Dr. Shehata received funds that rightfully belonged to the University. *Id.*

The University began its investigation into "billing improprieties" on the part of Dr. Shehata and Dr. Cunningham by initiating a meeting between the doctors and UK HealthCare Chief Compliance Officer Brett Short. [R. 9-2.]  In that meeting, Dr. Cunningham allegedly admitted "he took these actions because he was angry the Dean of the College of Dentistry. . . began enforcing a policy that faculty members in the Turfland clinic could not receive payment when residents were the treating providers[.]" [R. 9 at 4.]  Short further claims that Dr. Shehata admitted participating in Dr. Cunningham's billing scheme at Dr. Cunningham's direction. [R. 9-2 at 3.]

Dr. Shehata disputes almost the entirety of the foregoing.  Dr. Shehata agrees that the meeting with Brett Short, Dr. Cunningham, and himself took place, but describes it much differently.  According to Dr. Shehata, "Mr. Short notified Dr. Shehata that his documentation practices for electronic health records was improper." [R. 7-1 at 4.]  Although Dr. Shehata

2

disagreed with Mr. Short's assessment, he "ultimately agreed to change his practice consistent with Mr. Short's directive." *Id.*  Dr. Shehata apparently thought the matter was resolved until January 2019, when Dr. Shehata was called to a meeting at the Provost's office with Provost Blackwell and Mr. Short. *Id.*  At this meeting, "Provost Blackwell notified Dr. Shehata that UK intended to initiate employment termination proceedings immediately for allegedly forging approximately 120 [electronic health records] and committing Medicaid and Medicare fraud." *Id.*  Dr. Shehata says he has not been assigned any patients or clinical duties since this meeting. *Id.* at 6.  Additionally, Dr. Shehata's name was removed from the College of Dentistry's Faculty Clinic provider list.  Dr. Shehata says that to date, he "has neither been given an opportunity to review the alleged false documentation, nor been provided any clarification or information concerning such records." *Id.* at 7.

     Dr. Shehata initiated this lawsuit in January, 2020 in Franklin Circuit Court.  [R. 1-2.]  Defendants removed the case to this Court in February, 2020.  [R. 1.]  Based on his version of the facts, Dr. Shehata argues the Defendants violated his Fourteenth Amendment Due Process rights.  [R. 1-2 at 29–32.]  Dr. Shehata argues he has "a significant and protected interest in retaining his clinical privileges and duties [] through his employment contract," and that Defendants have deprived him of this property right by denying him a pre-deprivation notice and an opportunity respond to the fraudulent billing allegations. *Id.* at 30.  Dr. Shehata further contends that his removal from clinical duties and the provider list has caused his "patients to conclude that he has been credibly charged with some professional wrongdoing," therefore, he is entitled to "clear his name publicly." *Id.*  Dr. Shehata requests a preliminary injunction enjoining the Defendants from terminating his employment before June 30, 2021, ordering reinstatement of his clinical privileges, duties and activities, ordering Dr. Shehata's name be restored to UK's

3

provider list, and prohibiting Defendants from making statements "related to Dr. Shehata and the alleged wrongdoing that resulted in UK's wrongful termination of Dr. Shehata's clinical privileges, duties and activities."  [R. 7-1 at 21.]

## II

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (finding that issuance of a preliminary injunction "involv[es] the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it")).  To issue a preliminary injunction, the Court must consider: 1) whether the movant has shown a strong likelihood of success on the merits; 2) whether the movant will suffer irreparable harm if the injunction is not issued; 3) whether the issuance of the injunction would cause substantial harm to others; and 4) whether the public interest would be served by issuing the injunction.  *Overstreet,* 305 F.3d at 573 (citations omitted).

A court need not consider every factor if it is clear that there is no likelihood of success on the merits.  *See Amoco Protection Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 n. 12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.").  The Court of Appeals has clarified that, "[w]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor."  *City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (quoting *Obama for Am. v. Husted*, 697

F.3d 423, 436 (6th Cir.2012)).

For a myriad of reasons, the circumstances of this case do not warrant a preliminary injunction. First and foremost, Dr. Shehata has not demonstrated a strong likelihood of success on the merits. Dr. Shehata's complaint asserts not only due process violations, but violations of his employment contract and various University policies and procedures. The briefing of both parties and arguments at the telephonic hearing make clear that the ultimate outcome of this case depends in large part upon a close reading of the contractual provisions at hand, and upon the facts, which are heavily disputed. At this preliminary stage, it is far from clear which party is most likely to prevail.

In the same vein, it is not clear that Dr. Shehata will suffer an irreparable harm absent the injunction. Dr. Shehata's complaint couches his injury in constitutional terms: he asserts a deprivation of his protected liberty interest in his clinical privileges. Generally speaking, "[w]hen constitutional rights are threatened or impaired, irreparable injury is presumed." *ACLU Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 649 (6th Cir. 2015) (internal citations omitted). The parties agree that Dr. Shehata has a liberty interest in his clinical privileges, but Defendants argue that "[m]aintaining clinical privileges and being assigned patients are two distinct issues." [R. 9 at 8.] Defendants explain that Dr. Shehata has retained his privileges, and the University has simply ceased assigning him patients. Defendants contend that Dr. Shehata cannot show a due process violation because "he does not have a protected property interest in the assignment of patients." *Id.* In response, Dr. Shehata argues that Defendants' actions amount to constructive discharge. [R. 10.] But this is a fact intensive inquiry, and there are simply not enough facts before the Court to determine a likelihood of success on the merits as to either party. Still, because the University has prevented him from seeing patients or performing

5

clinical duties, Dr. Shehata says he has lost over half of his income. [R. 10 at 7.] This injury—the loss of a portion of his income—is compensable should he prevail on the merits of his claim.

As to the remaining factors to be considered, issuance of the injunction could cause substantial harm to the Defendants. If their version of events is correct, then a preliminary injunction would require the Defendants to assign patients to a practitioner they believe falsified medical records and defrauded the University. This is a greater potential harm than the harm that would result to Dr. Shehata, who at least will retain his salary and benefits, as he has until this point, absent the injunction. The effect on the public interest is likely neutral. While the public interest favors the enjoinment of a constitutional violation, as already explained, the record before the Court is not yet robust enough to conclude whether or not a constitutional violation has likely taken place. *See Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982).

### III

A motion for preliminary injunction asks the Court to take a preliminary review of the merits of a case. Through no fault of either party, the record is not fully developed enough for the Court to determine whether Dr. Shehata is likely to succeed on the merit of his claim. Neither it is clear that an irreparable injury to Dr. Shehata will result absent a preliminary injunction. Accordingly, the Plaintiff's Motion for Preliminary Injunction **[R. 7]** is **DENIED**.

This the 20th day of May, 2020.

Gregory F. Van Tatenhove
United States District Judge