UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| DR. EHAB SHEHATA | ) | |
| | ) | No. 3:20-cv-00012-GFVT |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| WILLIAM W. BLACKWELL, *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the Court on Defendant Dr. Jeffery Okeson's Motion to Dismiss [R. 65] and Parties' Agreed Order of Partial Dismissal [R. 106.] Between January 2019 and June 2020, Dr. Ehab Shehata, an employee of the University of Kentucky College of Dentistry accused of health care fraud, was forbidden from engaging in clinical activities and did not receive a renewal of his employment contract. [R. 67 at 3-6.] Dr. Shehata now alleges that a multitude of defendants, including Dr. Okeson, an Interim Dean of the College, violated several of his constitutional rights and Kentucky state laws. [*See* R. 55.] In response, Dr. Okeson presents a litany of defenses and moves for his dismissal from Dr. Shehata's complaint. [R. 65.] For the reasons stated below, Dr. Okeson's Motion to Dismiss [R. 65] is **GRANTED** and **DENIED IN PART** and Parties' Agreed Order [R. 106] is **GRANTED**.

# I

Dr. Ehab Shehata was employed at the College as both an oral and maxillofacial surgeon and as a clinical title series assistant professor from 2013 through June of 2020. [R. 65-1 at 1; R. 67 at 2.] In 2018, the office of the UK Healthcare Corporate Compliance began an investigation of Dr. Shehata regarding a "documentation concern," which was later "resolved without incident." [R. 67 at 2.] In January 2019, however, William Blackwell, the Provost of the University of Kentucky, informed Dr. Shehata that he was accused of "manipulat[ing] medical records to take credit for clinical services actually performed by residents." *Id.* at 3. Though Provost Blackwell allegedly indicated that "he was not comfortable moving forward with disciplinary action at that time and would further investigate the matter," he "forbade Dr. Shehata from performing any clinical activities." *Id.* As a result of this action, Dr. Shehata "was not allowed to treat patients in the faculty clinic, not allowed to perform surgery at UK Chandler Hospital, not allowed to oversee residents' and interns' patient care, not allowed to teach clinical courses, and forbidden from working at the Veterans' Administration Hospital." *Id.* at 4. On June 24, 2019, in the midst of the ongoing investigation into his billing practices, Dr. Shehata "signed his annual appointment and assignment contract," which he believed to guarantee him an additional two years of employment at the College. [R. 67 at 6.] In late October 2019, however, Dr. Shehata was presented a letter through UK's counsel, William Thro, indicating that, only if he agreed to certain conditions, allegedly including an admission of wrongful conduct, could he "keep his job." [*Id.* at 7; R, 65-1 at 2.] Dr. Shehata did not agree to the terms included in the letter, and, as a result, was informed by Mr. Thro that his "employment at UK would end on June 30, 2020." [R. 65-1 at 2.]

Three days later, on September 1, 2019, Dr. Jeffery Okeson became the Interim Dean of College. [R. 67 at 6.] Although, as Interim Dean, Dr. Okeson was made aware that Dr. Shehata was being dismissed and that his "'clinical title' needed to be terminated," he indicates that he was not provided details about Dr. Shehata's alleged wrongdoing from those ranked higher than him in the UK administration. [R. 67 at 7.] Nonetheless, Dr. Okeson soon granted approval of the Administrations' request that Dr. Shehata's reappointment period be deemed "terminal," to end on June 30, 2020, instead of lasting another term. *Id.* at 9. In a communication to Dr. Shehata dated November 22, 2019, Dr. Okeson indicated that he decided to approve Dr. Shehata's termination after having "conferred with the consulted faculty members" of the College's Appointment, Promotion and Tenure Committee and receiving "their counsel." [R. 66-3 at 209; R. 67 at 9; R. 68 at 5.] Dr. Shehata alleges that Dr. Okeson framed the decision to terminate Dr. Shehata as "out of his hands" and that he had little involvement in the decision. [R. 67 at 12.]

As a result of his termination, Dr. Shehata filed a complaint on January 16, 2020, against various members of the College and UK administration, alleging multiple causes of action. [R. 65-1 at 2.] Believing him to be uninvolved in any alleged wrongdoing, Dr. Shehata did not include Dr. Okeson as a defendant in his original filing. [*See* R. 1.] After discovery in this case allegedly revealed wrongdoing on behalf of Dr. Okeson, however, Dr. Shehata sought leave to add him as a defendant. [R. 65-1 at 3.] After being granted leave, Dr. Shehata amended his complaint on March 22, 2021, to allege that Dr. Okeson engaged in First Amendment retaliation against him, violated his procedural and substantive due process rights, defamed him, and violated Kentucky wage and employment law. [R. 56.] Now, Dr. Okeson moves for his

dismissal from all of Dr. Shehata's claims.  [R. 65-1; R. 75.]  Moreover, in a joint Motion, Parties agree to dismiss certain claims in this matter.  [R. 106.]

## II

The Court turns first to Dr. Okeson's Motion to Dismiss [R. 65.]  Dr. Shehata's Amended Complaint contains five causes of action against Dr. Okeson: a claim for First Amendment retaliation, a claim for violation of Dr. Shehata's Fourteenth Amendment procedural due process rights, a claim for violation of Dr. Shehata's Fourteenth Amendment substantive due process rights, a claim for violation of Kentucky Revised Statute 337.060, and a claim for defamation.  [R. 55.]  In response, Dr. Okeson alleges that each claim should be dismissed under Rule 12(b)(6).  [R. 65-1.]

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint.  In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff."  *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  The Court, however, "need not accept as true legal conclusions or unwarranted factual inference."  *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).  The Supreme Court has explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  *See also Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 ( 6th Cir. 2009).

Stated otherwise, it is not enough for a claim to be merely possible; it must also be "plausible."  *See Courie*, 577 F.3d at 630.  According to the Court, "[a] claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Moreover, under limited circumstances, a claim may be rendered plausible if a plaintiff pleads its "information and belief" with supporting facts. *See Modern Holdings v. Corning Incorporated*, 2015 U.S. Dist. LEXIS 41134 at *12 (E.D. Ky. 2015) ("While pleading on information and belief cannot insulate a plaintiff at the 12(b)(6) stage, *Iqbal* did not render pleading on information entirely ineffectual." *E.g.*, *Arista Records, LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010) ("The Twombly plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant . . .")).

### A

Dr. Shehata first alleges that Dr. Okeson engaged in First Amendment retaliation against him in violation of Section 1983. [R. 55 at 10-11.] Specifically, Dr. Shehata alleges that, by retroactively rendering his reappointment "terminal" because he refused to sign a letter which, among other things, included an admission of guilt to fraudulent activity, members of the UK Administration, including Dr. Okeson, violated his First Amendment rights. *Id.* Although Dr. Okeson was not yet Interim Dean when Dr. Shehata was presented the letter to sign, Dr. Shehata alleges that Dr. Okeson furthered the retaliatory effort because he failed to inform members of the APT Committee about why his clinical privileges and duties had been revoked. [*See* R. 55 at 7-8.] According to Dr. Shehata, this failure, alongside Dr. Okeson not assigning him new job duties after his clinical privileges had been taken away, caused the members of the APT Committee to agree to terminally appoint him without having a complete understanding of the wrongdoing of which he was accused and without understanding why he was only performing

limited job duties. *See id.*

In opposition, Dr. Okeson argues that Dr. Shehata has failed to state a claim upon which relief can be granted because the statute of limitations has run on his retaliation claim. [R. 65-1 at 6-8.] Claims brought under Section 1983 in Kentucky are subject to Kentucky state law's one-year statute of limitations. *Akins v. Elizabethtown Police Dep't*, 2009 U.S. Dist. LEXIS 2487 at *3 (W.D. Ky. 2009); *Bedford v. University of Louisville School of Medicine*, 887 F.2d 1086, *5 (6th Cir. 1989). The accrual of a Section 1983 claim is governed by federal law and is triggered "when the plaintiff knows or has reason to know of the injury." *Ji Qiang Xu v. Michigan State Univ.*, 195 Fed. Appx. 452, 455-56 (6th Cir. 2006). In his briefing, Dr. Okeson argues that any alleged "retaliation" against Dr. Shehata, including the revocation of his clinical duties, lack of promotion, and retroactive terminal reappointment, each occurred on or before January 17, 2019. [R. 65-1 at 7.] As a result, Dr. Okeson alleges that the one-year statute of limitations expired on January 17, 2020. *Id.* Alternatively, Dr. Okeson argues that he informed Dr. Shehata that he had approved his termination in November 2019 and thus the statute of limitations, at the latest, expired in November 2020. [R. 65-1 at 7-8.] Because Dr. Shehata did not seek to add Dr. Okeson as a Defendant until January 18, 2021, Dr. Okeson argues the statute of limitations precludes his First Amendment retaliation claim. [R. 68 at 5.]

Dr. Shehata responds with two arguments. First, he argues that Dr. Okeson was in a civil conspiracy with other members of the UK Administration and that the conspiracy renders his actions legally entwined with actions that occurred prior to any potential running of the statute of limitations. [*See* R. 67 at 14-15.] Second, Dr. Shehata argues that Kentucky's "discovery rule" prevented the statute of limitations from running until much later in this litigation. *Id.* at 15-16. "Under the 'discovery rule,' a cause of action will not accrue until the plaintiff discovers (or in

the exercise of reasonable diligence should have discovered), not only that he has been injured, but also that this injury might have been caused by the defendant's conduct." *Fluke Corp v. LeMaster*, 306 S.W.3d 55, 60 (Ky. 2010).  Accordingly, Dr. Shehata argues that because it was not revealed that Dr. Okeson had some involvement in his termination until discovery commenced, the statute of limitations did not expire in November 2020.  [R. 67 at 16-17.]

Upon review, the Court agrees with Dr. Shehata that his First Amendment retaliation claim against Dr. Okeson should not be dismissed, albeit for a different reason than those argued. First, Dr. Shehata's civil conspiracy argument holds no weight because he has not actually filed a civil conspiracy claim as an independent cause of action and, like the underlying tort on which the conspiracy is based, the statute of limitations for a civil conspiracy is also one year. *Muncy v. InterCloud Sys.*, 92 F.Supp.3d 621, 643-44 (E.D. Ky. 2015) (citing Ky. Rev. Stat. 413.140(1)(c)); *see also Christian Cnty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc.*, 515 F. App'x 451, 458-59 (6th Cir. 2013) (holding that a civil conspiracy is not a free-standing claim in Kentucky, but "merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort.").  Accordingly, because Dr. Shehata alleges that the underlying tort of retaliation occurred at the latest in November 2019, any related conspiracy claim would have also expired in November 2020.

Second, the discovery rule "is only available in cases where the fact of injury […] is not immediately evident or discoverable within the exercise of reasonable diligence, such as in cases of medical malpractice or latent injuries or illnesses." *Fluke*, 306 S.W.3d at 60-61 (overturning the lower court's application of the discovery rule to a products liability case where the plaintiff should have reasonably suspected a manufacturer's involvement in causing an injury).  Because Dr. Okeson explicitly informed Dr. Shehata that he had approved his terminal reappointment, Dr.

7

Shehata should have reasonably been on notice that Dr. Okeson might have been involved in perpetuating his injury. Consequently, the factual basis of this matter does not permit an application of the discovery rule.

Nonetheless, Plaintiff's claim survives Dr. Okeson's Motion to Dismiss due to the potential applicability of the doctrine of equitable estoppel. To render a party equitably estopped from relying on the statute of limitations, a party must show "(1) lack of knowledge or means of knowledge of the truth; (2) reliance, in good faith, based on something [the Defendant] did or did not do or state; and (3) resulting action or inaction on the [Plaintiff's] part that somehow changes their position or status for the worse." *Fluke*, 306 S.W.3d at 62. In his briefing, Dr. Shehata argues that Dr. Okeson led him to believe that he had limited or no involvement in the decision to terminally reappoint him. [R. 55 at 6-9; R. 67 at 16-17.] Moreover, Dr. Shehata alleges that Dr. Okeson failed to assign him alternative job duties in lieu of his clinical duties, as he was directed to do by Provost Blackwell, and that this failure assured his termination. [R. 67 at 16-17.] Because Dr. Shehata argues that he did not include Dr. Okeson as a defendant in his original Complaint because Dr. Okeson downplayed his involvement in his termination, equitable estoppel may be applicable in this matter. Moreover, the Sixth Circuit has indicated that unless "the allegations in the complaint affirmatively shows that the claim is time-barred," a Rule 12(b)(6) motion is "generally an inappropriate vehicle for dismissing a claim based on the statute of limitations." *Cataldo v. United States Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). Accordingly, due to the potential applicability of the doctrine of equitable estoppel, the Court declines to dismiss Dr. Shehata's retaliation claim.

8

**B**

Dr. Shehata next alleges that his employment income and clinical privileges were taken from him without procedural due process in violation of Section 1983. [R. 55 at 11-13.] In opposition, Dr. Okeson alleges that dismissal under Rule 12(b)(6) is appropriate because the statute of limitations has run on Dr. Shehata's claim. As above, claims brought under Section 1983 in Kentucky are subject to Kentucky state law's one-year statute of limitations. *Akins v. Elizabethtown Police Dep't*, 2009 U.S. Dist. LEXIS 2487 at *3 (W.D. Ky. 2009); *Bedford v. University of Louisville School of Medicine*, 887 F.2d 1086, *5 (6th Cir. 1989). The accrual of a Section 1983 claim is governed by federal law and is triggered "when the plaintiff knows or has reason to know of the injury." *Ji Qiang Xu v. Michigan State Univ.*, 195 Fed. Appx. 452, 455-56 (6th Cir. 2006). However, for procedural due process claims, "[t]he key date for the accrual of the limitations period is the injury, not the completion of any grievance process." *Id.* at 456.

In his Motion, Dr. Okeson argues that because "Dr. Shehata was made aware that his clinical privileges would not be returned and that he would be terminally reappointed by September 2019" and because "Dr. Okeson officially alerted Dr. Shehata that he would be terminally reassigned in November 2019," Dr. Shehata's procedural due process claim against Dr. Okeson, filed in January of 2021, exceeds the one-year statute of limitations, and must be dismissed. [R. 65-1 at 8-9.]

In response, Dr. Shehata first clarifies that he does not believe that Dr. Okeson was involved in the decision to deprive him of his clinical privileges and has not alleged as much. [R. 67 at 18.] In contrast, however, Dr. Shehata does assert that Dr. Okeson was involved in the decision to render him terminally reappointed. *See id.* Regarding Dr. Okeson's statute of limitations argument, Dr. Shehata responds that the statute of limitations did not run in

November 2020, a year after he was informed by Dr. Okeson that his contract was terminal, but, instead, ran in June 2020, a year after his contract ended, because that is when his property interest in public employment was taken from him. *See id.* at 18.

In reply, Dr. Okeson argues that Dr. Shehata's procedural due process claim began to accrue at the date he was informed that his contract had been terminally reassigned, not at the date that his contract expired. [R. 68 at 7-8.] In support, Dr. Okeson cites to *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991). In *Nasierowski*, the Sixth Circuit held that a landowner's procedural due process claim began to accrue when a zoning board passed a new zoning ordinance which caused him injury without providing him the right to notice and a hearing, not after the landowner sought a variance or fully completed any available grievance process. *See id.* at 894. As its rationale, the Sixth Circuit stated that, "in the case of a procedural due process claim, 'the allegedly infirm process is an injury in itself,'" and therefore "finality" of the decision-making process is not required for a parties' claim to be ripe. *Id.*; *see also Am. Premier Underwriters, Inc. v. AMTRAK*, 839 F.3d 458, 461 (6th Cir. 2016). Accordingly, Dr. Okeson argues that Dr. Shehata's claim accrued when he was informed that his contract had been reassigned as terminal without Dr. Shehata having been permitted notice and a hearing. [R. 68 at 7-8.] As such, Dr. Okeson asserts that the statute of limitations on Dr. Shehata's procedural due process claim expired, at the latest, in November 2020. *See id.*

Upon review, however, the Court finds that the present matter is distinguishable from *Nasierowski* and that the statute of limitations did not expire prior to Plaintiff's amended filing. Although it does not appear that the Sixth Circuit has decided a case like the one at present, Seventh and Fifth Circuit case law is informative. In *Lawshe v. Simpson*, the Seventh Circuit ruled that it is the termination of public employment that triggers the statute of limitations in a

10

procedural due process case, not the decision to terminate itself. 16 F.3d 1475 (7th Cir. 1994). In *Lawshe*, a public employee was suspended and then later terminated without having received "some sort of hearing or consultation." *Id.* at 1477. The employee filed suit over a year beyond when he had received notice of his upcoming termination, alleging a violation of his property right to public employment. *Id.* Although the district court ruled that the statute of limitations began to accrue when Lawshe received notice that his employment would terminate, the Seventh Circuit disagreed. *Id.* at 1478. In its ruling, the Circuit rationalized that the Fourteenth Amendment's protection of property rights arises when one's property right has been violated, not simply when a decision has been made to later violate one's rights. This is because, theoretically, one could receive due process up until the date of termination, thereby preventing one's property right from infringement. *See id.* at 1480. Consequently, because the Fourteenth Amendment protects one from "deprivation of public employment without due process," instead of simply protecting one from the "denial of a predetermination due process," the Circuit ruled that "a claim for deprivation of public employment without due process accrues on, and the statute of limitation begins to run from, the actual termination of employment." *Id.* at 1480 (citing *Rubin v. O'Koren*, 621 F.2d 114, 116 (5th Cir. 1980)).

The Court agrees with the Seventh Circuit. In his Complaint, Dr. Shehata asserts that "[t]he actions of Defendants deprived Dr. Shehata, without due process, of his clinical privileges and employment income, which constitutes property protected by the due process clause of the Fourteenth Amendment." [R. 55 at 12.] Although Dr. Shehata describes the allegedly insufficient process he was given, his claim clearly revolves around the deprivation of his property right to his employment. *See id.* Unlike in *Nasierowski*, where the Plaintiff's property was immediately affected upon the zoning board's decision and where the Plaintiff was instantly

11

relegated to the grievance process, Dr. Shehata's due process property rights were not allegedly violated until the moment his termination occurred. Before that moment, the University could have given him additional due process. Accordingly, the Court finds that the statute of limitations did not expire until June 30, 2021, one year past the date of Dr. Shehata's termination. As a result, Dr. Shehata's claim is timely.[1]

C

Dr. Okeson next seeks dismissal of Plaintiff's substantive due process claim. The Due Process Clause of the Fourteenth Amendment provides that a state may not deprive a citizen of life, liberty, or property without due process of law. U.S. Const. Amend. XIV § 1. The Fourteenth Amendment "prohibits the government from imposing impermissible substantive restrictions on individual liberty," for example, a liberty interest to engage in a chosen occupation. *See Conn v. Gabbert*, 526 U.S. 286, 291-92, 119 S. Ct. 1292, 143 L. Ed. 2d 399 (1999) (recognizing that "the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation"). Substantive due process claims can be divided into two categories: "(1) deprivations of a particular constitutional guarantee, or (2) government actions that 'shock the conscience.'"

---

[1] The Court also recognizes the conflict between Dr. Shehata's argument that his procedural due process rights were not violated until the date of his termination with the filing of his Amended Complaint and procedural due process claim roughly six months prior to his termination. Dr. Okeson points out that, by now making this argument, Dr. Shehata concedes that his claim was not ripe at the point of its filing. However, it is evident that, because Dr. Shehata has since been terminated, this matter is now ripe for adjudication and no longer presents an abstract future harm. Accordingly, the Court has proper subject matter jurisdiction over Dr. Shehata's procedural due process claim. *See United Steelworkers of America, Local 2116 v. Cyclops Corp.*, 860 F.2d 189, (6th Cir. 1988) (citing *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580 (1985) (finding that the purpose of the ripeness doctrine is to prevent the Court from entangling themselves in "abstract disagreements.").

12

*Garner v. Harrod*, 656 Fed. App'x 755, 761 (6th Cir. 2016).

Dr. Shehata alleges that in January 2020, on notice of his upcoming termination, he applied for a new position at the Louisiana State University College of Dentistry. [R. 55 at 46.] To assist in his effort, Dr. Okeson sent an email to the Dean of the LSU College of Dentistry in support of Dr. Shehata's application. *Id.* In his email, Dr. Okeson described Dr. Shehata as having "lost his clinical privileges at UK Healthcare," but otherwise an excellent and qualified candidate. *See id.* Although clearly well-intentioned, Dr. Shehata argues that the use of the word "lost" implied to LSU that his privileges were taken after he was given due process and found guilty of misconduct. [R. 67 at 12-13, 19 ("when a physician has his clinical privileges revoked it is typically the kind of thing that ends up in the newspaper. It is a black mark, and it is a big deal.").] In contrast, Dr. Shehata characterizes the "loss" of his clinical privileges as a deprivation or inappropriate revocation. *See id.* Because Dr. Okeson indicated that Dr. Shehata "lost" his privileges from UK Healthcare in his email, Dr. Shehata asserts that his substantive due process right to his reputation was violated. [R. 55 at 14.] Moreover, Dr. Shehata argues that Dr. Okeson imposed "on him a stigma which has foreclosed his freedom to take advantage of other employment opportunities." *Id.*

In support of his Motion to Dismiss, Dr. Okeson presents two arguments. First, he argues that Dr. Shehata's substantive due process claim is rendered implausible because the statement made by Dr. Okeson is true. *See, e.g., Geiger v. Town of Greece*, 311 Fed. App'x 413, 416 (2d. Cir. 2009) (affirming lower court dismissal of substantive due process claim when the plaintiff admitted to the alleged conduct). Dr. Okeson points to Dr. Shehata's Complaint in support. Within the Complaint, Dr. Shehata alleges that "Defendants prohibited [him] from performing any clinical activities [..]," that Defendants deprived him of his clinical privileges without due

13

process," that he had been "forbidden from performing any clinical activities," and that he suffered "[d]e facto revocation of [his] clinical duties and privileges." [R. 55 at 10, 12, 16.] Because the Complaint expressly indicates that Dr. Shehata was not permitted to perform his clinical duties, Dr. Okeson argues that Dr. Shehata cannot claim that the relaying of this same information to LSU caused him harm. [*See* R. 65-1 at 10.] In response, Dr. Shehata argues that the specific wording in this situation matters and that, by using the word "lost," Dr. Okeson implied that it had been formally concluded that Dr. Shehata had committed a wrong at UK Healthcare. [R. 67 at 19 ("Such privileges are recognized as a constitutionally protected property interest, and UK Healthcare's medical staff bylaws provide significant process including written notice of the basis for the suspension or revocation, an opportunity to present evidence and witnesses, to be represented by counsel, and to participate in a hearing before a neutral decision maker.")].

Second, Dr. Okeson argues that Dr. Shehata fails to state a claim upon which relief may be granted because he "fails to allege intentional or deliberate behavior on Dean Okeson's part." [R. 65-1 at 11.] *See Daniels v. Williams*, 474 U.S. 327 (1986); *see also Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."). Though Dr. Shehata's Complaint alleges that Dr. Okeson "believed falsely" that Dr. Shehata's clinical privileges had been revoked by UK Healthcare, Dr. Okeson argues that an allegation of false belief is not satisfactory. [*See* R. 65-1 at 11-12.] In response, Dr. Shehata argues that he has sufficiently pled a "deliberate and reckless" act on behalf of Dr. Okeson to survive dismissal. [R. 67 at 20.] He states, "[u]pon information and belief Dr. Okeson never inquired with UK Healthcare about Dr. Shehata's status. Instead, he

14

made a reckless assumption." *Id.* He also cites to case law which indicates that an allegation of deliberate indifference may be sufficient in a due process claim. *See id.* (citing *Cty. of Sacramento*, 523 U.S. at 834).

Upon review, the Court will grant dismissal. Although, by viewing the complaint in the light most favorable to the plaintiff, the Court agrees with Dr. Shehata that Dr. Okeson's use of the phrase "lost" does imply that a formal process was completed, the Court will nonetheless grant dismissal because Dr. Shehata has failed to properly plead his claim. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). In his Complaint and subsequent briefing, Dr. Shehata alleges that Dr. Okeson "willfully, wantonly, recklessly, and maliciously" engaged in a substantive due process violation against him. [R. 55 at 15.] However, this statement is simply a legal conclusion that the Court is not bound to accept as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007). Moreover, though Dr. Shehata alleges that Dr. Okeson engaged in reckless conduct "upon information and belief," a plaintiff must plead supporting facts in his complaint which render his claim plausible beyond just his personal belief that his claim is true, which Dr. Shehata has not done. *Germain v. Teca Pharms., USA, Inc.*, 756 F.3d 917, 931 (6th Cir. 2014) ("[t]he mere fact that someone believes something to be true does not create a plausible inference that it is true."). Consequently, the only inference sufficiently pled is that Dr. Okeson's conduct was negligent. Because a state official's negligence cannot support a constitutional due process claim, Dr. Shehata's allegation is implausible.[2] *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). Accordingly, the Court will dismiss Dr. Shehata's substantive due process claim against Dr. Okeson.

---

[2] Moreover, although Dr. Shehata cites to case law which indicates that "deliberate indifference" can support a due process claim, his complaint provides no facts that Dr. Okeson sent his email with deliberate indifference. [R. 67 at 20, n. 89.]

15

**D**

Dr. Okeson next moves for dismissal of Dr. Shehata's defamation claim. Dr. Shehata alleges that, alongside violating the Due Process Clause, Dr. Okeson also defamed him by stating that he had "lost his clinical privileges at UK Healthcare." [R. 55 at 9.] In response, Dr. Okeson argues that Dr. Shehata's claim is implausible because his statement was true, and that Dr. Shehata's defamation claim is barred by the statute of limitations. Because the Court has already determined that, by viewing the facts in favor of the plaintiff, Dr. Okeson's phrasing was not wholly accurate, it will not dismiss Dr. Shehata's defamation claim under the same rationale. However, the Court will analyze Dr. Okeson's alternate argument. Defamation claims in Kentucky are governed by a one-year statute of limitations. Ky. Rev. Stat. Ann. § 413.140(1)(d). The cause of action accrues when the allegedly slanderous or defamatory statement is published or made. *See Caslin v. Gen. Elec. Co.*, 608 S.W.2d 69, 70 (Ky. Ct. App. 1980)).

In his Complaint, Dr. Shehata alleges that Dr. Okeson sent the relevant email to the Dean of the LSU College of Dentistry on January 24, 2020. [R. 55 at 9.] Accordingly, Dr. Shehata's defamation claim expired on January 24, 2020. Although Dr. Shehata filed a motion to amend his complaint on January 18, 2020, which would normally toll the statute of limitations, the Supreme Court has indicated that "state service requirements which are an integral part of the state statute of limitations should control in an action based on state law which is filed in federal court under diversity jurisdiction." *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752-53 (1980); *see also Bradford v. Bracken Cty.*, 767 F.Supp.2d 740, 746 (E.D. Ky. 2011) ("the rationale of *Walker* does not change 'solely because of the fortuity' that [the plaintiff] pleaded a federal claim along with other state claims."). Accordingly, because Kentucky law indicates that an

action is commenced "on the date of the first summons or process issued in good faith from the court having jurisdiction of the cause of action," the Court must look to the date that summons was issued to determine whether an action was filed prior to the expiration of the statute of limitations. Ky. Rev. Stat. Ann. § 413.250. In this matter, Dr. Shehata filed summons against Dr. Okeson on April 6, 2021, three weeks after his leave for amendment was granted. [R. 54; R. 59.] Moreover, Dr. Shehata did not seek equitable tolling from the Court to prevent the statute of limitations from running. *See Bradford*, 767 F.Supp.2d at 751-52 (holding that a plaintiff's failure to seek equitable tolling of the statute of limitations for his state law claim at the time his motion to amend was filed required the dismissal of his claim as untimely). Accordingly, Dr. Shehata's claim exceeded the one-year statute of limitations. Although Dr. Shehata argues in response that the discovery rule precludes the running of the statute of limitations, as the Court has indicated above, the discovery rule is inapplicable in this matter. *Fluke Corp v. LeMaster*, 306 S.W.3d 55, 60-61 (Ky. 2010). Accordingly, because "the allegations in the complaint affirmatively show[] that the claim is time-barred," Dr. Shehata's defamation claim as to Dr. Okeson is dismissed. *Cataldo v. United States Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).

E

Finally, the Court turns to Dr. Shehata's claim under KRS 337.060, Dr. Okeson's qualified immunity arguments, and Parties Proposed Agreed Order [R. 106.] Because Dr. Okeson presents multiple arguments in favor of dismissal and because Plaintiff agrees to voluntarily dismiss Count V as to Dr. Okeson, Count V as to Dr. Okeson is dismissed. Additionally, because Plaintiff agrees to dismiss his claims against all individual defendants in their official capacities, Dr. Okeson, in his official capacity, is dismissed from this matter. However, Dr. Okeson's claim that qualified immunity shields him in his individual capacity

17

from liability remains pending. Although Dr. Okeson asserts that he is shielded by qualified immunity, his briefing is not thorough and fails to discuss the elements required to establish qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Moreover, because "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity," the Court declines to grant dismissal on qualified immunity grounds.

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Dr. Okeson's Motion to Dismiss [R. 65] is **GRANTED** and **DENIED IN PART**;

2. Counts III, V, and VI of Dr. Shehata's Amended Complaint [R. 55] are **DISMISSED** as to Dr. Okeson;

3. Parties' Agreed Order [R. 106] is **GRANTED**. Count V as to Defendants Thro and Holloway is dismissed and Plaintiff's claims against all defendants in their official capacities are **DISMISSED**.

This the 16th day of September, 2021.

Gregory F. Van Tatenhove
United States District Judge