UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| DR. EHAB SHEHATA, <br><br> Plaintiff, <br><br> v. <br><br> DAVID W. BLACKWELL, *et al.*, <br><br> Defendants. | Civil No. 3:20-cv-00012-GFVT-EBA <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on a Motion to Reconsider Summary Judgment filed by the University of Kentucky. [R. 157.] Previously, the Court granted summary judgment in favor of Plaintiff Dr. Ehab Shehata on two theories of breach of contract. [136.] UK asks the Court to reconsider its decision that the University breached by denying Dr. Shehata eligibility to treat clinic patients through the Dental Services Program and by failing to provide adequate notice of its decision not to renew his contract. [R. 157.] UK suggests that Dr. Shehata failed to raise these theories in his motion for summary judgment, alternatively that the Court's decision was simply incorrect, and that the Court failed to consider some of its arguments in defense against the contract claims. *Id.* Because none of these arguments amounts to a clear error, UK's Motion to Reconsider **[R. 157]** is **DENIED**.

**I**

The University of Kentucky employed Dr. Ehab Shehata as both an oral and maxillofacial surgeon and as a clinical title series assistant professor from 2013 through June of 2020. [R. 71-4 at 1; R. 107 at 3.] Dr. Shehata's employment letter, which the parties renewed every year,

stated that he was "eligible to participate in the College's Dental Services Plan (DSP) which allows faculty members to receive income in patient care activities in College of Dentistry clinics or hospital operating rooms." [R. 136; R. 107-36 at 2.] After University officials accused him of fraud, UK suspended Dr. Shehata from treating patients at the faculty clinic, which limited his income. [R. 71-4 at 21–23.] Shortly after renewing his contract in 2019, UK fired Dr. Shehata. *Id.* at 29–30. Dr. Shehata sued the University and several officials for violations of due process, First Amendment retaliation, defamation, breach of contract, and violations of Kentucky wage and hour law in Franklin County Circuit Court. [R. 1-2.]

After the case was removed, this Court reviewed cross-motions for summary judgment filed by UK and by Dr. Shehata. [R. 157; R. 162.] The Court granted and denied in part both motions. [R. 136; R. 137.] The officials appealed as to the federal claims. [R. 148-1.] Based on the Sixth Circuit's disposition, all of Dr. Shehata's federal claims are no longer viable. *Id.*

Several of his state claims remain. In its summary judgment order, the Court considered three theories of breach for Dr. Shehata's contract claim. First, the Court found that the statute of limitations barred Dr. Shehata's argument that UK breached its obligation to pay him for clinic services that he performed prior to his suspension. [R. 136 at 17–18.]

Second, the Court considered whether UK breached Dr. Shehata's employment contract by suspending him from the Dental Services Program. *Id.* at 18. Dr. Shehata argued that his contract incorporated by reference a university regulation, Regulation X, that limited UK's ability to suspend a faculty member to scenarios where "immediate harm to the faculty member or others is threatened by the faculty member's continuance . . . ." *Id.* at 19. The University disagreed, and the Court adopted its reasoning. *Id.* Because Dr. Shehata's contract did not incorporate the regulation, the Court interpreted only the terms of Dr. Shehata's offer letter,

2

which did not include a provision by which Dr. Shehata's eligibility for clinic duty could be removed. *Id.* at 19–20. Thus, UK's own argument led the Court to find that it had breached Dr. Shehata's contract by suspending him from clinic duty. *Id.* at 20.

Finally, the Court considered whether UK breached Dr. Shehata's contract by failing to provide twelve months' notice of its decision to not renew their deal. *Id.* The Court found that UK did not adequately notify Dr. Shehata of its non-renewal decision until September 2019, rejecting two earlier attempts at notice as insufficient. *Id.* at 21. In January 2019, Dr. Blackwell accused Dr. Shehata of fraud and insinuated that he was under investigation. *Id.* Likewise, in August of 2019, UK General Counsel William Thro attempted to notify Dr. Shehata by letter that his contract would not be renewed. *Id.* The Court found neither of these attempts to be effective because UK permitted Dr. Shehata to continue working during Dr. Blackwell's investigation and because Mr. Thro left open the possibility of renewal in his letter. *Id.* at 22. Given that Dr. Shehata did not receive clear notice that his contract would not be renewed until September 2019, the Court ruled that UK breached the contract by not renewing Dr. Shehata in September 2020. *Id.*

Now, UK asks the Court to reconsider these decisions. [R. 157.] In opposition, Dr. Shehata insists that the Court's opinion was well reasoned. [R. 160.] The matter is now ripe for review.

**II**

A federal district court has the authority to reconsider interlocutory orders under both the common law and Federal Rule of Civil Procedure 54(b). *Rodriguez v. Tenn. Laborer's Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). Traditionally, courts only reconsider interlocutory orders "when there is (1) an intervening change of controlling law; (2) new

evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.* That said, district courts can revisit their interlocutory summary judgment decisions "for any reason." *ACLU of Ky. v. McCreary Cnty.*, 607 F.3d 439, 450 (6th Cir. 2010); *see also Dayton Veterans Residences Ltd. P'ship v. Dayton Metro. Hous. Auth.*, No. 21-3090, 2021 U.S. App. LEXIS 34511, at *15–17 (6th Cir. Nov. 19, 2021) (discussing the *Rodriguez* factors but noting that, under *ACLU of Kentucky*, district courts have authority to reconsider summary judgment for reasons outside those factors).

UK asks the Court to reconsider its decisions regarding Dr. Shehata's clinic duty and the renewal of his contract. UK first argues that the Court could not grant summary judgement on these theories of breach because Dr. Shehata did not raise them in his motion for summary judgment. [R. 157 at 3.] Alternatively, UK claims that its offer letter to Dr. Shehata did not create a contractual right to perform clinic duty. *Id.* at 5. Finally, UK complains that the Court did not consider its defenses of substantial compliance and acceptance through performance in its summary judgment order. *Id.* at 7. The Court considers each of these objections in turn.

A

Because UK had adequate notice that it needed to provide the Court with arguments regarding Dr. Shehata's clinic duties and the renewal of his contract, the Court could base summary judgment on theories that Dr. Shehata raised outside of his original motion. A federal district court can grant summary judgment on grounds not raised in a party's motion after providing notice and time to respond. Fed. R. Civ. P. 56(f)(2); *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 829 (6th Cir. 2013). While the practice is discouraged, a district court can even enter summary judgment on grounds not raised or argued by the parties "so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." *Smith*, 708 F.3d at 829

4

(quoting *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Tr. Fund*, 203 F.3d 926, 931 (6th Cir. 2000)). The key inquiry is whether the losing party knew that he had to bring the Court the facts necessary to survive summary judgment. *Id.* (citing *Excel Energy, Inc. v. Cannelton Sales Co.*, 246 F. App'x 953, 959–60 (6th Cir. 2007)).

Formal notice is not required. *See id.* Instead, the inquiry is whether, given the totality of the proceedings, the losing party had sufficient notice of the possibility that summary judgment could be issued against it. *Id.* The procedural concerns are greatest "where summary judgment was granted absent a party motion or where the court granted summary judgment in the non-moving party's favor." *Turcar, LLC v. IRS*, 451 Fed. App'x 509, 513 (6th Cir. 2011). On the other hand, summary judgment for a moving party, even if on an alternative basis than those briefed, "is a less extreme *sua sponte* action, because the moving party's motion puts its opponent on at least some notice that defensive action is required." *Id.* Ultimately, courts consider whether the prevailing party moved for summary judgment, whether the losing party moved for summary judgment, what issues the parties focused on in their briefs, what factual materials the parties submitted to the court, and whether motions were filed by co-defendants. *Smith*, 708 F.3d at 829 (citing *Turcar,* 451 Fed. App'x at 513).

Here, the parties presented the Court with cross-motions for summary judgment. [R. 157; R. 162.] The existence of cross-motions for summary judgment generally gives each side "an opportunity and an incentive to present all of its evidence and arguments . . . ." *N. Canton Bd. of Educ. v. AT&T, Inc.*, 397 F. Supp. 3d 1023, 1035 n.24 (N.D. Ohio 2019) (quoting *Aubin Indus., Inc. v. Smith*, 321 F. App'x 422, 423 (6th Cir. 2008)). UK should have been aware that it needed to put its best foot forward because both it and Dr. Shehata asked the Court to resolve their

5

claims. Still, UK argues that it did not have adequate notice of two grounds for summary judgment.

First, UK complains that Dr. Shehata did not raise his nonrenewal theory of breach in his motion for summary judgment. [R. 157 at 3.] Dr. Shehata's motion argued the nonrenewal issue in a different context, as a violation of his right to due process. *Id.* at 4. Dr. Shehata later argued that UK's nonrenewal decision amounted to a breach of contract claim in a response brief filed to UK's cross-motion for summary judgment. *Id.*; [R. 109 at 31.] UK believes that the Court conflated these documents and that Dr. Shehata's failure to discuss nonrenewal as a breach of contract in his original motion is a reason to reconsider summary judgment. [R. 157 at 4.]

UK asks for a level of formality that is not required. Notice is the standard, and UK does not demonstrate a lack of notice, much less how it was prejudiced.[1] Regardless of when the nonrenewal as breach argument originated, it was an issue and an evidentiary matter that the parties briefed. *See Turcar*, 451 App'x at 514. Dr. Shehata extensively documented the communications and timeline relevant to renewal of his contract in a memorandum that accompanied his motion for summary judgment. [R. 71-4 at 29–31.] It is true that this motion did not clearly connect this evidence to a breach of contract claim. However, UK had an opportunity to fully present its contrasting evidence as to the date when it gave clear notice that Dr. Shehata's contract would not be renewed. *See George v. Youngstown State Univ.*, 966 F.3d 446, 467 (6th Cir. 2020) (purpose of notice and opportunity is to ensure that losing party will supply "the evidence needed to demonstrate a genuine dispute as to the issues raised in the motion.").

---

[1] The losing party must also demonstrate that it was prejudiced by its inability to respond to the basis for summary judgment. *Smith*, 708 F.3d at 830–31. Summary judgment is proper unless the losing party could have produced new favorable evidence or arguments with notice. *Id.* at 831.

6

Moreover, Dr. Shehata explicitly raised his nonrenewal as breach theory in response to UK's motion for summary judgment. [R. 109 at 35.] And UK discussed it in its reply. [R. 110 at 10.] Accordingly, "[t]his is not a case where the parties provided 'little to no argument'" on the issue. *See Turcar*, 451 App'x at 514; *c.f. Littler v. Ohio Ass'n of Pub. Sch. Emps.*, No. 20-3795, 2022 U.S. App. LEXIS 8182, at *18–19 (6th Cir. Mar. 28, 2022) (summary judgment against movant improper where prevailing party never "took the position, during litigation or otherwise," that a notice requirement in a contract was not strictly complied with). UK had sufficient notice that nonrenewal as breach was an issue in play for summary judgment.

Second, UK suggests that Dr. Shehata never raised the theory that his removal from clinic duty violated the terms of his offer letter. *Id.* at 5. Instead, UK claims that Dr. Shehata only argued that it violated Governing Regulation X, which the Court held was not a part of Dr. Shehata's contract. *Id.* To succeed, UK must demonstrate that it lacked notice that the Court could decide that UK breached the terms of the offer letter and not Regulation X. *See Smith*, 708 F.3d at 829.

That argument ignores the record. In its motion for summary judgment, UK asked the Court to construe only the terms of the offer letter as constituting the contract. [*See* R. 107 at 38; *see also* R. 110 at 9.] UK argued that the terms of Dr. Shehata's offer letter lacked the specific language necessary to incorporate Regulation X by reference. *Id.* Its advocacy succeeded. [*See* R. 136 at 19.] The Court construed Dr. Shehata's contract without the inclusion of Regulation X. *Id.* Apparently, UK suggests that it could not have anticipated the consequences of its own argument. As the Court said at the time, UK "cannot have its cake and eat it too." *Id.*; *see also Aubin Indus., Inc. v. Smith*, 321 F. App'x 422, 423 (6th Cir. 2008) (where a party filed a motion

7

for summary judgment on a particular theory, it had "an incentive to present all of its evidence and arguments concerning" that claim).

Ultimately, both decisions that UK seeks to revisit were briefed either by itself or Dr. Shehata through the course of the cross-motions for summary judgment. The parties submitted a voluminous amount of evidence in support and opposition of summary judgment. If UK wished to litigate the contract renewal and clinic duty theories of breach more thoroughly, its opportunity to do so came and went.

### B

UK also believes that the Court incorrectly interpreted Dr. Shehata's offer letter. The letter stated that Dr. Shehata was "eligible to participate in the College's Dental Service Plan (DSP) which allows faculty members to receive income from patient care activities in College of Dentistry Clinics" and that Dr. Shehata would be "eligible for distribution of supplemental clinical income from patient care activities . . . ." [R. 157 at 5 (quoting R. 107-36 at 2–4).] UK argues that the Court conflated eligibility to treat clinic patients with the right to do so. *Id.* at 6. To UK, the contract only granted Dr. Shehata the right to be paid for clinic work if UK allowed him to perform it. *Id.* Because, after UK suspended him, Dr. Shehata continued to receive payment for work already performed, UK argues that Dr. Shehata was always eligible as contemplated by the contract. *Id.*

UK ignores the letter's use of the term eligibility in two distinct contexts. The letter promised Dr. Shehata that he would be "eligible to participate in the College's Dental Service Plan" and, separately, that he would be "eligible for distribution of supplemental clinical income . . . ." *Id.* at 5. Under basic contract law, a court must give preference to an "'interpretation which gives a reasonable, lawful, and effective meaning to all the terms' over a reading 'which

8

leaves a part unreasonable, unlawful, or of no effect.'" *Maze v. Bd. of Dirs. for the Commonwealth Postsecondary Educ. Prepaid Tuition Tr. Fund*, 559 S.W.3d 354, 363 (Ky. 2018) (quoting *Comstock & Co., Inc. v. Becon Constr. Co.*, 932 F. Supp. 948, 967 (E.D. Ky. 1994)). UK's reading would collapse Dr. Shehata's eligibility to participate into his eligibility to receive payment. The better reading is to give effect to both promises under their own distinct meanings. As the Court previously found, Dr. Shehata's participation eligibility created a distinct guarantee from his compensation eligibility. [*See* R. 136 at 20.] Thus, UK may be correct that Dr. Shehata did not have a right to receive clinic work, but he did have a contractual expectation that he would remain eligible to do so.

Moreover, UK's characterization of its actions is disingenuous. UK claims that Dr. Shehata "was simply reassigned from performing clinical assignments." [R. 157 at 6.] The Court prefers the Sixth Circuit's phrasing, that Dr. Shehata received "an indefinite deprivation of clinical duties" or a "suspension." [R. 148-1 at 14.] Regardless, the effect under either euphemism is the same. Dr. Shehata was not "eligible to participate in the College's Dental Service Plan," so UK breached the terms of his offer letter. [R. 136 at 20.]

### C

UK next asks the Court to consider two arguments it raised in its motion for summary judgment. [R. 157 at 7.] UK points out that the court did not consider these arguments in its summary judgment order. *Id*. UK argues that, even if it did not strictly comply with the notice requirement regarding renewal of Dr. Shehata's contract, it still substantially complied. *Id*. Additionally, UK suggests that, by continuing to collect his salary, Dr. Shehata accepted the terms of his continued employment, including his suspension from clinic duty. *Id.* at 8. To make these arguments, UK relies on a summary judgment opinion issued by the Franklin Circuit Court.

9

*Id.* at 7 (citing *Heavin v. Ky. State Univ.*, No. 20-CI-00293 (Franklin Cnty. Cir. Feb. 23, 2021)).[2] Even assuming that an opinion of a state trial court were binding on this Court, the decision is readily distinguishable.

In *Heavin*, Kentucky State University chose not to renew a mathematics professor's contract for the 2019–20 academic year. [R. 107-38 at 2–3.] KSU employed Dr. Heavin on an academic-year to academic-year basis. *Id.* at 7. To terminate Dr. Heavin, KSU had to notify her of its decision prior to the beginning of her last academic year of employment and not less than 270 days before the end of her employment. *Id*. KSU notified Dr. Heavin that she would be terminated on February 13, 2019, with fewer than 270 days remaining in the 2018–19 academic year. *Id.* at 2–3. To account for its deficiency, KSU agreed to continue paying Dr. Heavin until November 12, 2019, which was just a bit more than 270 days. *Id.* at 7. Dissatisfied with KSU's calculation, Dr. Heavin sued and claimed that her contract required notice prior to the start of the 2018–19 academic year. *Id.* at 5.

The Franklin Circuit Court disagreed and held that KSU substantially complied with the terms of Dr. Heavin's contract. *Id.* at 6. UK believes that it is entitled to the same result, a finding that it substantially complied with the requirement that it give Dr. Shehata twelve months' notice of its decision to not renew his contract. [R. 157 at 7.] It argues that Dr. Shehata received "notice at least ten months in advance . . . ." *Id.*

UK misapprehends *Heavin*. The Franklin Circuit Court's willingness to find substantial compliance was based, in part, on KSU's attempt to cure its deficient notice. While KSU did not provide notice before the 2018–19 school year, it did agree to keep paying Dr. Heavin for the full

---

[2] A copy of the state court's decision may be found in the record for this case. [R. 107-38.] This opinion cites thereto.

10

270 days. [R. 107-38 at 7.] Thus, "KSU substantially complied with the requirement that [Dr. Heavin] receive no 'less than the 270 calendar days' notice." *Id.*

On the other hand, UK did not offer to compensate Dr. Shehata for its untimely notice. As the Court previously found, UK did not clearly notify Dr. Shehata that it had decided to fire him until September 19, 2019. [R. 136 at 22.] Therein, UK stated that Dr. Shehata's employment would end on June 30, 2020, and that "further settlement discussions with Dr. Shehata are pointless." [R. 1-2 at 59.] Accordingly, UK has not persuaded the Court that ten months' notice should be substantial compliance with twelve months' notice.

Relatedly, UK uses *Heavin* to suggest that Dr. Shehata accepted his removal from clinic duty by continuing to take payment under the contract for his final year of employment. [R. 157 at 8.] KSU agreed to pay Dr. Heavin beyond the end date of her existing contract, through November 2019. [R. 107-38 at 7.] The Franklin Circuit Court considered this additional term of compensation to be valuable consideration offered by KSU. *Id.* at 7–8. Accordingly, when Dr. Heavin accepted the money, she also agreed to modify the terms of her contract and accept a new end date of November 2019. *Id.* UK suggests that, when Dr. Shehata signed his last agreement with UK, "he knew full well that appointment did not include clinical duties unless he reached a subsequent agreement with the University." [R. 157 at 8.]

Once again, UK wants to have its cake and eat it too. UK asks the Court to enforce a contractual term based on an understanding it claims to have reached with Dr. Shehata. Yet, UK has consistently argued that the Court cannot do that. Discussing Dr. Shehata's offer letter, UK claimed that "Dr. Shehata brings his breach of contract claim pursuant to the limited waiver of immunity found in KRS 45A.245. This limited waiver permits an action to be brought for breach of a *written* contract. Only written contracts suffice. Thus, an implied contract is

11

insufficient." *Id.* at 5 (emphasis in original). Three pages later, UK advocated for the Court to interpret Dr. Shehata's final renewal document in light of his subjective knowledge. *See id.* at 8.

Dr. Shehata's final renewal form did not include a restriction of his clinic duties. [*See* R. 7-8.] To the contrary, it explicitly stated that "the appointee agrees to accept the provisions of the Dentists' Services Plan of the University of Kentucky A.B. Chandler Medical Center." *Id.* As the Court did during summary judgment, it agrees with UK that only written contracts may be considered. If anything, Dr. Shehata's written reappointment suggests that he remained eligible for clinic duty through the DSP. Dr. Shehata's alleged subjective understanding that he would not receive further clinic duty is irrelevant.

### III

In sum, none of UK's arguments for reconsideration are persuasive. Accordingly, it cannot show a need to correct a clear error or prevent manifest injustice. *See Rodriguez v. Tenn. Laborer's Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). For these reasons, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that UK's Motion to Reconsider **[R. 157]** is **DENIED**.

This the 2nd day of May 2023.

Gregory F. Van Tatenhove
United States District Judge